UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA   )
              Plaintiff   )
                          )  Cr.# 04-10370-RGS
      v.                  )
                          )
RYAN MARTIN               )
              Defendant   )
_____)
```

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT
TO F.R.Cr.P. RULE 32(a)(C) and 18 U.S.C. § 3553(a)**

*There is no magic bullet to eradicate drug abuse. Drugs purport to provide an instant answer to boredom, anxiety or pain. But the solution to the drug problem for the individual and the country is anything but instant. Treating drug addiction requires patience, compassion, and a will to carry on.*

   *Barry McCaffrey*
   *Director, Office of National Drug Control Policy*


This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Mr. MARTIN by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553 (a) as now constitutionally required by the Supreme Court.  This memorandum will supplement the PSR, which, according to its current practice, does not "address, individually, the provisions of § 3553(a)."(See Addendum, page 1, response to Objection #1) Further, Defendant respectfully submits reasons why this Honorable Court should consider and grant a sentence that is in variance with the advisory Guideline level based on all the factors of 3553(a) and **numerous factors in mitigation.**

1

In the post <u>United States v. Booker</u> 543 U.S. __, 125 S. Ct. 738 (2005) and <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004) world this Honorable Court is free to look at **all** the factors of 18 U.S.C. § 3553(a) in imposing a "reasonable sentence" that is "sufficient, but not greater than necessary to comply with the purposes set forth [ in this provision]."

Of particular note, Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair severity of federal sentences and the harmful effects that the rigid application of the Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure:

"Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal Sentencing Guidelines should be revised downward..."

In the instant case, Mr. MARTIN stands before this Honorable Court ready to be sentenced for his participation in a small time street level conspiracy involving the distribution of OxyContin. He is currently 29 years of age. He has been gainfully employed as a self taught computer programmer and he is fulfilling his commitments to his child and family. PSR ¶ 65, 87, 96.  Recently he has changed jobs to Ipswich Software company in Lexington, MA.

Mr. MARTIN became involved in the case at bar as a person who purchased OxyContin from larger suppliers in order to

satisfy his own habit.  According to his own admissions, Mr. MARTIN's involvement was promulgated by a history of drug abuse that began when he was in high school and soon bloomed into "using two eight balls [of cocaine] a day. ... Cocaine and OxyContin were [his] drugs of choice," PSR ¶s 74-83. Despite such excessive drug use, he generally was able to maintain gainful employment, PSR ¶s 87-94 although it was apparent that such drug use, and the concomitant not appearing for work, caused him to lose certain employment, PSR ¶ 90.

RYAN MARTIN, on the other hand, after spending the first *six and a half months in custody awaiting trial*, has taken major steps towards rehabilitation.  Since his release, according to Pre-Trial Services, he has been "in full compliance with all conditions imposed on him," including testing for use of controlled substances.  He also has been gainfully employed as a computer programer which has allowed him to pay his child support and pay down his debt.

Although this Honorable Court will consider the Guideline Offense Level when imposing sentence, the Guideline drug quantity table, U.S.S.G. § 2D1.1, in the case at bar, which quantifies and provides "equivalency" to marijuana, fails to reflect the statutory goals of sentencing mandated by 18 U.S.C. § 3553, or Mr. MARTIN's true criminal culpability.

The Sentencing Commission's recent Fifteen Year Report, in discussing this "terracing" approach to drug quantity, has found that "no other decision of the Commission has had such a profound impact on the federal prison population." 15 Year Report, at 49.  The drug trafficking guideline's terracing

3

approach (along with the relevant conduct rule) "had the effect of increasing prison terms far above what had been typical in past practice, and in many cases above the level required by the literal terms of the mandatory minimum statutes." Id., at 49. The Commission's study finds that "the sentences required by the guidelines above the minimums required by the ADAA . . . have significantly increased average sentence length above the levels required by statute." Id., at 54. In fact, "[a]bout 25 percent, or eighteen months, of the average expected prison time of 73 months for drug offenders sentenced in 2001 can be attributed to guideline increases above the mandatory minimum penalty levels." Id.

While the terracing approach in the Sentencing Table may seem like second nature after years of use, it actually subverts the statutory goals of sentencing. It results in sentences that are disproportionate to the seriousness of the offense, creates disparity among similarly situated defendants, and otherwise fails to take account of the purposes of sentencing and factors relevant to sentencing under 18 U.S.C. §3553(a). The Sentencing Table gives disproportionate weight to drug quantity at the expense of the very factor that Congress was originally trying to accentuate: a defendant's role in the offense

In the case at bar, Probation has found Mr. MARTIN responsible for acquisition and/or distribution of 625 pills (80 milligram each) of OxyContin, PSR ¶ 31 which were intended for "distribution as well as personal use." PSR ¶ 12. Under the Guidelines, and the equivalency tables, Probation has found him

4

responsible for 100 to 400 kilograms of marijuana with a base offense level of 26.  After reductions for his "safety valve" cooperation, U.S.S.G. 2D1.1(b)(7) and acceptance of responsibility, U.S.S.G. 3E1.1, his total offense level is **21**.

Probation found an enhancement for obstruction of justice, however, the defense would submit that such an enhancement is unwarranted in the case at bar because the "threats" were *unrelated* to the offenses of conviction.  Although in the plea agreement, page 2, the parties note that Count V, under a *strict* application of the Guidelines in a mandatory Guideline system would result in a two level enhancement, Mr. MARTIN, respectfully submits that such an enhancement is inappropriate in the present case because the implied threat alleged was not part of the counts of conviction and was not the kind of "threat" that should give rise to such an enhancement, under the *statutory* scheme of "the nature and circumstances of the offense."

The total **Guideline** level prior to any other calculation for departures or factors in mitigation is thus **21**.  Such an offense level for a criminal history category I offender results in a sentence of **37-46 months.**

This Honorable Court is also free to look at disparity in comparative sentences for similar conduct that would help in imposing a just and fair sentence.  Mr. MARTIN is responsible for distributing and aiding in the distribution of roughly 50 grams of a controlled substance.   At the time of sentencing Mr. MARTIN will have already served in maximum security "detention" (with extremely limited privileges and without

5

rehabilitative or treatment programs) approximately six and a half months.

## FACTORS IN MITIGATION

Mr. MARTIN respectfully submits that this Honorable Court could take into consideration the following factors in mitigation that are consistent with the "departures" that are addressed in the Guidelines and other factors that would assist the Court in determining a reasonable sentence that may be in variance with the total Guideline calculation but that are consistent with 18 U.S.C. § 3553(a):

**NEED FOR TREATMENT AND REHABILITATION**... Mr. MARTIN has suffered a recent, but protracted history of substance abuse. PSR ¶s 139-147.  Prior to the instant offense he never had been in any substance abuse treatment program.  It is clear  that Mr. MARTIN is an oxycontin drug addict who only involved himself with the activity solely because of his addiction. See PSR ¶ 142. Coupled with his minimal or peripheral role of introducing the agents to the suppliers (who knew that they could use him because of his addiction), Mr. MARTIN's history of drug abuse is a significant factor under 18 U.S.C. § 3553(a)(2)(D) because it evidences his need for treatment.

**EARLY RESOLUTION**  Mr. MARTIN's early admission of wrongdoing, clearly instigated others to plead guilty rather than proceed to trial and will likely save the government significant resources beyond that typically associated with "acceptance of responsibility."  Such a "departure" is also consistent with that contemplated by U.S.S.G. § 5K2.3.  In that Mr. MARTIN was

6

one of the first to plead at an early stage of the proceedings, the Court may also want to consider whether a **further reduction under U.S.S.G. § 5K3.1** is also appropriate.  Although the government, under the strict application of the Guidelines, is required to make such a motion in an "authorized" district, it would appear that the fundamental constitutional principal of equal protection would require that application of that Guideline departure, as a mitigating circumstance in variance with the Guidelines, is applicable to all similarly situated defendants if the goal of eliminating unwarranted disparities is to met.

**RELATIVE CULPABILITY AND PERIPHERAL ROLE.**  There is little question that Mr. MARTIN is less culpable than others in this OxyContin distribution conspiracy.  The typical Guideline calculations, fail to distinguish a supplier from an addict.  Mr. MARTIN respectfully submits that his lessor role in the transactions, in conjunction with his own addiction, is greater than that taken into account by the rigid application of the drug quantity Guidelines.

**POST OFFENSE REHABILITATION.** Since his release from pre-trial detention Mr. MARTIN has taken substantial steps towards becoming a productive member of society. He has become gainfully employed as a computer programer and he is attending to his financial responsibilities to family (child support). Such steps toward "rehabilitation," along with his assistance to and cooperation with the government has shown how he has truly changed his ways.

Lastly, Mr. MARTIN respectfully submits that even if any one of the above reasons do not provide a sufficient ground for the sentence requested here, **the totality of circumstances** justify the "reasonable sentence" requested that may well be in variance with the Guideline calculations.

**RECOMMENDED SENTENCE**

Mr. MARTIN, prior to being released from custody, had spent approximately **6 and a half months actual time** in custody pending these proceedings. Mr. MARTIN respectfully requests that this Honorable Court sentence him to **time served with three years probation**. Mr. MARTIN would also benefit from continued drug treatment.  As a condition of probation, the Court, in recognition of Mr. MARTIN's history of drug abuse, should also direct that he cooperate with Probation in a program or plan for drug treatment including regular drug testing.  Such a sentence would avoid disparity, reflect the seriousness of the offense and provide Mr. MARTIN with needed treatment and rehabilitation.  It is also a "reasonable sentence" reflecting all the factors in 18 U.S.C. § 3553(a) that is well within the discretion of this Honorable Court.

Date: January 11, 2006          Respectfully submitted,

                                RYAN MARTIN,
                                By his attorney,

                                *s/Michael C. Bourbeau*
_____
                                Michael C. Bourbeau (BBO #545908)
                                Bourbeau and Bonilla
                                77 Central St, 2nd Floor
                                Boston, MA 02109
                                (617) 350-6565

8